IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

STEELSTRIKE LEATHER PRODUCTS INC.,
a Colorado corporation,

      Plaintiff,

v.

UNITED LEATHER USA, LLC, a Texas limited liability company,
doing business as UNITED LEATHER USA, INC.;
JUAN LEON, an individual; and
LENORE AND TERRY AYESSE,
doing business as DESERT DIGS FINE FURNISHINGS,

      Defendants.

---

**COMPLAINT WITH JURY DEMAND**

---

Plaintiff SteelStrike Leather Products Inc. ("SteelStrike"), for its Complaint against Defendants United Leather USA, LLC, doing business as United Leather USA, Inc. ("United Leather"), Juan Leon ("Leon"), and Lenore and Terry Ayesse, doing business as Desert Digs Fine Furnishings ("Ayesse") (collectively "Defendants"), hereby states as follows:

### I.     THE PARTIES

1.     SteelStrike is a Colorado corporation, having its principal place of business at 27940 County Road 319, Buena Vista, Colorado 81211.

2.     Upon information and belief, Leon is an owner and President of United Leather and has a business address at 1233 East Levee Street, Dallas, Texas 75207-7107.

3. Mr. Leon formed United Leather after Mr. Leon's previous company filed bankruptcy apparently to avoid paying damages assessed or to be assessed in a lawsuit alleging misappropriation of another company's product designs. Upon information and belief, United Leather was formed in 2002 as a Texas limited liability company having a principal place of business at 1233 East Levee Street, Dallas, Texas 75207-7107.

4. Mr. and Mrs. Ayesse are in the furniture business, are specifically furniture representatives, and sell furniture from various manufacturers, including United Leather, and have a business address of Dallas Market Center, WTC Room 11016, Dallas, Texas 75342. More recently, Mr. and Mrs. Ayesse also acquired a business showroom office in Denver, Colorado.

## II.   JURISDICTION AND VENUE

5. This is an action for copyright infringement arising under the Copyright Laws of the United States, 17 U.S.C. § 501 *et seq.*, trade dress infringement and induced/contributory infringement under Federal and Colorado law.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, 15 U.S.C. § 1121, and 28 U.S.C. § 1367 (the supplemental jurisdiction statute codifying pendent and ancillary jurisdiction doctrines).

7. Upon information and belief, Defendant Leon and Philip Smith negotiated and entered in an oral agreement, formed in Colorado, in approximately 2005 on behalf of his company, Defendant United Leather, and that agreement appears to be the genesis of this dispute. During the performance of the contract, Leon and United Leather worked for SteelStrike in Denver, Colorado, receiving product from and shipping product to Denver,

Colorado. Upon information and belief, Defendants Leon, United Leather and Mr. and Mrs. Ayesse are also currently conducting business and sell and distribute products within this judicial district and SteelStrike has been damaged in this judicial district by Defendants' conduct. In short, all Defendants are subject to personal jurisdiction in this judicial district.

8. Venue is proper in this United States District Court for the District of Colorado pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

### III.   GENERAL ALLEGATIONS

**A.   SteelStrike's Business**

9. Plaintiff SteelStrike is based out of Buena Vista, Colorado, and was founded in approximately 1989 by Mr. Smith. Mr. Smith is currently the President and Chief Executive Officer of SteelStrike and is also a master leather craftsman.

10. SteelStrike is engaged in the business of designing, manufacturing, and selling leather and wood and upholstered furnishings, including sofas, chairs, tables, beds, barstools, mirrors and hat racks, and monograms and brands, and other custom furniture. In particular, SteelStrike specializes in manufacturing and offering a line of superior quality hand-crafted leather products, including various furniture and other accessories, utilizing the finest materials available. Indeed, SteelStrike insists on using real wood, instead of plywood or particle board, Italian leather, steel bases, and hand-tooling (hand-carving), as opposed to embossing, in all of its leather designs. Further, SteelStrike utilizes vegetable tanned leathers or saddle leathers for its furniture pieces. Materials showing some of these products are attached as Exhibit 1, and those materials are incorporated herein by this reference. As a result, SteelStrike's outstanding reputation can be attributed, at least in part, to its high-end quality products.

11. SteelStrike's process of making its leather furniture is more likened to creating pieces of art than manufacturing of chairs and couches on an assembly line. The hand-tooling of leather, which is the heart of SteelStrike's process of making its furniture, takes hours of skillful leather carving to create intricate floral and artistic designs that are incorporated into the furniture, such as in chair backs, sofa backs, dining tables and headboards for beds. The resulting hand-crafted leather furniture turns a house displaying the furniture into a virtual art gallery.

12. SteelStrike has developed and enjoyed considerable growth and success due to its established reputation for its leather goods and furnishings. Since starting out originally in Santa Fe, New Mexico, SteelStrike moved to Buena Vista, Colorado to a larger manufacturing facility and showroom gallery. In 2006, SteelStrike further expanded by designing and building a showroom in the Denver Merchandise Mart (now known as the "Denver Mart") to offer and sell its line of goods.

13. SteelStrike's normal business operations include not only running its showroom in the Denver Mart, but also participating in various trade shows, such as the National Finals Rodeo Cowboy Christmas Gift Show, an annual trade show in Las Vegas, Nevada, where SteelStrike shows its products in its own sales booths. Mr. Smith participates in these trade shows on a regular basis and attending these shows is a regular part of SteelStrike's marketing efforts.

**B.    SteelStrike's Copyright and Trade Dress**

14. SteelStrike is especially known for its hand-tooled (hand-crafted) leather designs incorporated on its leather and wood furnishings. In collaborating with other master craftsmen, Mr. Smith and SteelStrike have spent a considerable amount of time and money in developing,

creating and marketing a line of hand-tooled designs for their leather and wood furnishings. These designs reflect the American West and aesthetic flare associated with the Old West.

15. One of SteelStrike's most well-known and exclusive designs is referred to as "Cattle Baron" desk chair, which includes a unique overall design. Originally developed by Tony Laier, a master leather craftsman who was a full time employee of SteelStrike, the Cattle Baron design also contains elements of a floral, vine and leaf type design, which is a combination of European, Western and lodge design styles. The design also contains an oval inlay with a hand-tooled, hand-carved leather center fill design in the oval, referred to as "the Eldorado" carving. Another element of the basic design consists of a second hand-tooled, hand-carved design surrounding the oval inlay. The former design element is typically found on the backs of many SteelStrike chairs.

16. One of SteelStrike's most popular leather furnishings that incorporates all Cattle Baron design elements ("Cattle Baron Design") is the Cattle Baron desk chair. A true and accurate copy of a photograph showing SteelStrike's Cattle Baron desk chair is attached hereto as Exhibit 2 and is incorporated herein by this reference.

17. Due to the popularity and distinctiveness of the Cattle Baron design, both the oval inlay and the Eldorado style carving are elements that have also been separately incorporated into other leather furnishings offered by SteelStrike, such as other chairs, sofas, benches, bed frames, desks and bars. By the consistent use of these elements across a variety of products, SteelStrike has created an overall look and theme to its products ("Cattle Baron Trade Dress"). True and accurate copies of website pages from SteelStrike's website, www.steelstrike.com,

5

reflecting these products for sale are attached hereto as Exhibit 3 and are incorporated herein by this reference.

18.     SteelStrike's line of products that incorporate the Cattle Baron Trade Dress have met with commercial success and consumer recognition.  Thus, the Cattle Baron Trade Dress has developed significant source-identifying meaning in the mind of relevant consumers.  Moreover, SteelStrike has also invested substantial time, creative effort and money in developing its highly distinctive, original and successful Cattle Baron Trade Dress.  As a result of this and years of superior product development activities and consumer service, SteelStrike has developed substantial consumer recognition, trust, loyalty and goodwill in and to its Cattle Baron Trade Dress.

19.     Moreover, based upon SteelStrike's continuous and uninterrupted use of the Cattle Baron Trade Dress for more than twelve (12) years in interstate commerce, relevant consumers have come to associate the Cattle Baron Trade Dress exclusively with SteelStrike.  SteelStrike has acquired strong common law trade dress rights in and to the Cattle Baron Trade Dress.

20.     Finally, SteelStrike appreciated the value associated with the Cattle Baron design and sought to formally protect its intellectual investments.  Accordingly, SteelStrike obtained and owns Federal Copyright Registration VA 1-762-753 covering the "Cattle Baron Desk Chair Back," which issued on March 16, 2011.  A true and accurate copy of this Federal Copyright Registration is attached hereto as Exhibit 4 and is incorporated herein by this reference.

C.      **SteelStrike and United Leather's Business Relationship**

21.     Formed in 2002, United Leather primarily manufactures and offers for sale a line of home theater seating.  Subsequently, Mr. Leon was apparently looking to expand United

Leather's product offerings into other types of specialty furnishings. Mr. Leon asked Mr. Smith if SteelStrike would be willing to sell chair backs to United Leather to sell in the Dallas, Texas market.

22.  Mr. Smith was not interested in allowing Mr. Leon to sell SteelStrike's products under the United Leather brand. Mr. Smith was also not interested in hiring Mr. Leon to create hand-tooled leather furniture for sale as authentic SteelStrike products, as Mr. Smith's artisan craftsmanship of his hand-carved leather furniture is done by him or fully trained artisans at Mr. Smith's business location in Colorado. However, Mr. Smith did then need assistance with manufacturing and assembly of authentic SteelStrike products to keep up with demand. Additionally, Mr. Smith was interested in reentering into the Texas market by opening a new showroom in Dallas, Texas. SteelStrike was previously represented in the Texas market, which consisted of his furniture being displayed, advertised and sold through a distributor's showroom, The Jerry's Showroom, in the Dallas Market Center, for a number of years. In the early 2000's, SteelStrike also had a retail showroom in Fort Worth, Texas. SteelStrike's presence in The Jerry's Showroom in Dallas and its own showroom in Fort Worth resulted in a significant number of sales of the Cattle Baron desk chair in the Texas market, along with significant consumer recognition of the Cattle Baron Trade Dress in the marketplace. Accordingly, Mr. Smith then thought a business arrangement between SteelStrike and United Leather could be mutually beneficial.

23.  After some negotiation in approximately October 2005, SteelStrike hired Mr. Leon and his company, United Leather, to manufacture and assemble the frames of SteelStrike's chairs. Through this subcontract arrangement, SteelStrike originally would produce leather

24. At the beginning of the relationship between Mr. Smith and Mr. Leon, Mr. Smith provided Mr. Leon with a number of hand-carved leather pieces incorporating the Cattle Baron Trade Dress for Mr. Leon to manufacture and assemble into chairs for standing chair orders. Subsequently, Mr. Leon advised Mr. Smith that United Leather had either lost or damaged one (1) hand-carved leather piece needed to fulfill a chair order of SteelStrike ("Damaged Piece"), and thus asked for a replacement hand-carved leather piece. Mr. Smith did not question the veracity of Mr. Leon's statements, and a replacement piece ("Replacement Piece") was provided to United Leather and Mr. Leon without question.

25. For about a year, between December 2005 and December 2006, United Leather manufactured and assembled frames for SteelStrike's various lines of chairs, including the Cattle Baron desk chair, and completed final assembly of the products. During this time period, Mr. Smith became increasingly dissatisfied with the quality of the final products United Leather was producing for SteelStrike. Despite his efforts to address these issues, Mr. Smith ultimately found it necessary to terminate SteelStrike's upholstery and assembly agreement with United Leather. Consequently, SteelStrike found another company to upholster and assemble its products.

### D. United Leather's Previous Infringing Conduct

26. In early 2011, Mr. Smith went to the Dallas Market Center ("DMC") in Dallas, Texas with the intent to sign a contract to lease showroom space in the DMC for the advertisement, display and sale of SteelStrike furniture. In the DMC, Mr. Smith observed Mr. Leon and United Leather offering for sale an imitation version of the Cattle Baron desk chair, in the Desert Digs Fine Furnishings showroom space, which was located directly adjacent to the showroom space which Mr. Smith was about to lease. Upon inspection, Mr. Smith saw that the desk chair had an exact copy of the Cattle Baron Design incorporated onto the chair back. Mr. Smith went to examine the chair, and upon close inspection, the imitation desk chair did not incorporate fine, hand-carved leather in the chair back, but rather an embossed thin leather back. However, it was clear that the embossed back was a direct copy of the Cattle Baron Trade Dress. The chair back appeared embossed, as the back of the imitation desk chair had no hand-carved workmanship, thus the Cattle Baron Trade Dress appeared to be produced by the mere stamping or embossing of a design onto a piece of leather. Mr. Smith also noted that the materials used for the imitation chairs were much cheaper and inferior to his chairs, utilizing plywood frames, cheap leather and plastic caster wheels. In an effort to initially resolve the matter without legal action, Mr. Smith personally approached Mr. Leon and Mr. Ayesse and requested that they immediately cease manufacturing and selling the chairs.

27. Despite Mr. Smith's personal attempts to resolve the dispute amicably, Mr. Leon and United Leather continued to sell the imitation versions of the Cattle Baron desk chair. Accordingly, on March 21, 2011, through counsel, SteelStrike sent a formal cease and desist

letter. A true and accurate copy of this letter is attached hereto as Exhibit 5 and is incorporated herein by this reference.

28.   In response, on March 31, 2011, counsel for Mr. Leon and United Leather claimed that its sales of the infringing chairs in question were minimal and thus would cease manufacture and sale of the chairs. A true and accurate copy of this letter is attached hereto as Exhibit 6 and is incorporated herein by this reference. At that time, SteelStrike considered the matter resolved and took no further action.

29.   Based upon Mr. Smith's visit to the DMC in early 2011, it was clear that the knockoff Cattle Baron desk chairs being manufactured and sold by United Leather were being distributed by Desert Digs Fine Furnishings, a business name for Mr. and Mrs. Ayesse. Indeed, Mr. Smith viewed the knockoff chair in the Desert Digs Fine Furnishings showroom space at the DMC. A true and accurate copy of advertising materials showing sale of products by the Ayesses through the DMC is attached as Exhibit 7 and is incorporated herein by this reference.

30.   On March 21, 2011, again through counsel, SteelStrike also appropriately sent a formal cease and desist letter to Mr. and Mrs. Ayesse concerning the unauthorized sale of the Cattle Baron chair being produced by United Leather. A true and accurate copy of that letter is attached as Exhibit 8 and is incorporated herein by this reference. Mr. and Mrs. Ayesse did not respond to SteelStrike's counsel, but verbally communicated to Mr. Smith over the phone that Desert Digs Fine Furnishings was no longer selling the infringing chairs.

31.   During the same visit to Texas in early 2011, Mr. Smith visited a number of furniture showrooms in Fort Worth, Texas and discovered United Leather's imitation version of the Cattle Baron desk chair being displayed and offered for sale. The showrooms that were

displaying and offering for sale United Leather's imitation version of the Cattle Baron desk chair included Brumbaugh's of Fort Worth, Texas, Western Heritage Furniture of Weatherford, Texas and Rio's Interiors of Fort Worth, Texas.  A true and accurate copy of advertising materials for Western Heritage Furniture showing United Leather's imitation version of the Cattle Baron desk chair is attached as Exhibit 9 and is incorporated herein by this reference.  A true and accurate copy of advertising materials for Rio's Interiors showing United Leather's imitation version of the Cattle Baron desk chair is attached as Exhibit 10 and is incorporated herein by this reference.

       32.      Upon further consideration, Mr. Smith decided not to sign a lease for showroom space for SteelStrike at the DMC, because of the infringing acts by United Leather, Mr. Leon and Desert Digs Fine Furnishings, and the fact that if SteelStrike opened a showroom at the DMC displaying the Cattle Baron desk chair, it was possible that potential consumers may view SteelStrike as the copier, not United Leather and Mr. Leon.

**E.**      **The Post-March 2011 Infringement**

       33.      On approximately May 23, 2012, Mr. Smith was in Dallas, Texas to revisit the idea of opening a SteelStrike showroom in the DMC, and visited a restaurant called Javier's, located at 4912 Cole Avenue, Dallas, Texas 75205.  The restaurant had a smoking room, where Mr. Smith discovered forty (40) chairs with the Cattle Baron Design and Trade Dress featured upon them.  A true and accurate copy of a photo of one of these chairs is attached hereto as Exhibit 11 and is incorporated herein by this reference.  The chairs at Javier's were of the same inferior quality and workmanship, with the embossed/stamped chair back, as the chairs that Mr. Smith saw in March 2011 at the DMC.  Mr. Smith approached the restaurant staff and inquired where the restaurant had acquired the chairs.  Restaurant management gave a note to Mr. Smith

with the name and phone number of Mr. Leon and United Leather.  Restaurant management also told Mr. Smith that the restaurant had just received the chairs within the last year, well after United Leather stated it would cease manufacturing and selling chairs with the Cattle Baron Design and Trade Dress.

34.     To confirm the restaurant management's statements, Mr. Smith had a close friend contact United Leather and Mr. Leon the next day to inquire about ordering some of the exact chairs he had seen in Javier's.  Mr. Leon stated to this individual that United Leather could fulfill an order for those chairs.  It appeared to Mr. Smith that Mr. Leon and United Leather had continued to manufacture and sell the imitation Cattle Baron desk chairs despite their assurances that all manufacture and sales would cease back in March 2011.

35.     Mr. Smith next came to learn that the knock-off versions of his chairs were selling to the public successfully due to the knockoff chairs being sold for approximately $650-700.  In comparison, SteelStrike's Cattle Baron desk chairs sell to wholesalers for approximately $1,950, with the resulting sale price to the public typically being 25%-40% higher than the wholesale price.  The price differential between an authentic and a knockoff chair is obviously significant, making it practically impossible for SteelStrike to compete for sales of its own chair.

36.     Since the time SteelStrike sent its cease and desist letter in March 2011, SteelStrike has experienced a consistent decrease in its sales of furnishings featuring the Cattle Baron Design and Trade Dress.  Mr. Smith also decided not to lease showroom space in the DMC because there was no longer an available clientele for SteelStrike's genuine products in the Dallas, Texas market in light of the much cheaper knockoff products being advertised and sold by United Leather.

37.     SteelStrike has also experienced significant damages in its projected product sales. Indeed, at a trade show or national rodeo show, SteelStrike can experience revenues anywhere from $40,000 to upwards of $280,000. Revenues from sales of its products can typically range from $600,000-800,000 per year. As a result of United Leather and Mr. Leon's activities, SteelStrike is unable to sell any of its products effectively in the Texas market at trade shows and rodeo shows, continuing to losing valuable revenue and potential clientele.

38.     Moreover, United Leather's inferior imitation chairs featuring the Cattle Baron Design and Trade Dress do not last nearly as long as SteelStrike's chairs. United Leather's use of cheap materials and inferior construction is thus also damaging SteelStrike's reputation, as customers associate the United Products as emanating from SteelStrike, though this is untrue.

39.     To add insult to injury, it has come to Mr. Smith's attention that Mr. and Mrs. Ayesse executed a contract to offer furnishings for sale through the Denver Mart, specifically through Room M1473 of the Denver Mart. Included within the furnishings being offered by Mr. and Mrs. Ayesse at the Denver Mart are products manufactured by United Leather, specifically including the knockoff Cattle Baron desk chair. *See* materials attached as Exhibit 12, all of which are incorporated herein by this reference.

40.     The above-referenced damages, as well as other damages, have been sustained by and are being suffered by SteelStrike as a direct result of Defendants' advertising and marketing activities. More specifically, Defendants have and continue to prominently display photographs of the knockoff Cattle Baron desk chair in their advertising materials, causing actual and potential customers not to deal with SteelStrike and/or to believe that SteelStrike is the copier,

i.e., reverse confusion. Defendants' advertising activities, as well as their sales activities, are at the root of the damage being caused to SteelStrike.

41. Upon information and belief, United Leather has and is continuing to advertise its business generally, as well as its infringing chairs, through unauthorized use of the copyrighted Cattle Baron Design and Trade Dress. Unless enjoined, these activities will continue to cause damage and harm to SteelStrike.

## FIRST CLAIM FOR RELIEF
### (Trade Dress Infringement § 43(a) of the Lanham Act – All Defendants)

42. SteelStrike incorporates paragraphs 1 through 41 as though fully set forth herein.

43. Defendants have advertised (specifically including by showing the Trade Dress in print advertising materials), promoted and sold, and continue to promote and sell in interstate commerce, furnishings using SteelStrike's Cattle Baron Trade Dress. In so doing, Defendants have described falsely and misrepresented its goods and those goods' characteristics.

44. Defendants' actions, including its advertising actions, have created a likelihood of consumer confusion as to the affiliation, connection or association with SteelStrike and/or as to the origin, sponsorship or approval of the chairs by SteelStrike.

45. Defendants' unauthorized use of the Cattle Baron Trade Dress, in connection with the marketing and sale of leather and wood furnishings, specifically leather chairs, is a willful violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46. As a result of Defendants' unlawful actions, SteelStrike has suffered commercial harm.

47. SteelStrike has been and will continue to be irreparably harmed by Defendants' unlawful actions and has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### (Willful Copyright Infringement, 17 U.S.C. § 101, *et seq.* – All Defendants)

48. SteelStrike incorporates paragraphs 1 through 47 as though fully set forth herein.

49. SteelStrike complied with all relevant provisions of the U.S. Copyright Act in securing rights and privileges associated with copyrights in the Cattle Baron Design. These rights are reflected in Copyright Registration VA 1-762-753 owned by SteelStrike.

50. Defendants have copied, used, and continue to copy and use in their advertisements and furnishings offered for sale, without permission, the Cattle Baron Design, which was substantially copied from the Cattle Baron desk chair. Such copying and use, specifically including use of that copyrighted design in print advertising for the infringing product, constitutes infringement of SteelStrike's Cattle Baron Design copyrights. Defendants' infringement is, as outlined above, willful and intentional.

51. Defendants' acts of infringement have caused and continue to cause damage and irreparable harm to SteelStrike, in amounts to be determined at trial.

## THIRD CLAIM FOR RELIEF
### (Inducement/Contributory Infringement - Defendant Leon)

52. SteelStrike incorporates paragraphs 1 through 51 as though fully set forth herein.

53. Mr. Leon knowingly and systematically induced, caused, and materially contributed to the above-described unauthorized copying and distribution of advertisements

and furnishings containing the Cattle Baron Design and Cattle Baron Trade Dress and thus to the infringement of Plaintiff's exclusive rights.

54. As outlined above, the foregoing acts of infringement by Mr. Leon have been willful, intentional and purposeful, in disregard of and indifference to Plaintiff's rights. Such conduct constitutes contributory and induced infringement of SteelStrike's Cattle Baron Design and Cattle Baron Trade Dress.

55. Mr. Leon's acts of infringement have caused and continue to cause damage and irreparable harm to SteelStrike, in amounts to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, SteelStrike prays that the Court enter an Order for Judgment as follows:

A. That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors, assigns and parent and subsidiary entities, and any and all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1) any further infringement of the Cattle Baron Design;

(2) any further direct or indirect use of SteelStrike's Cattle Baron Trade Dress or any mark or trade dress which is confusingly similar thereto;

(3) performing any action or using any trade dress, or other name, mark, symbol or slogan which is likely to cause confusion or mistake, or to deceive or otherwise mislead the trade and/or the public into believing that SteelStrike and Defendants are one and the same or in some way connected, or that SteelStrike is the sponsor of Defendants, or that Defendants are in some manner affiliated or associated with, or under the supervision or control

of SteelStrike, or that Defendants' products originate with SteelStrike, or are connected or offered with the approval, consent, authorization, or under the supervision of SteelStrike;

   (4) ordered to immediately cease using the Cattle Baron Design in all forms of expression, including any manufacture and/or sale of goods incorporating the Cattle Baron Design;

   (5) manufacturing, marketing or selling any product or material containing or utilizing SteelStrike's intellectual property; or

   (6) any other conduct constituting unfair competition with SteelStrike.

 B. That Defendants be ordered to deliver up to SteelStrike for destruction, or certify destruction of, all products that infringe SteelStrike's Cattle Baron Design or contain SteelStrike's Cattle Baron Trade Dress or any confusingly similar trade dress, used in connection with the manufacture, marketing or sale of leather and wood furnishings;

 C. That Defendants be ordered to deliver up to SteelStrike any and all tools, stamps and/or embossing plates, the Damaged Piece and the Replacement Piece, used in the creation of the Cattle Baron design and/or Cattle Baron Trade Dress and/or fully describe their inability to do so;

 D. That Defendants be ordered to deliver up to SteelStrike any and all information regarding both the manufacture and sales of the Cattle Baron design and/or Cattle Baron Trade Dress, including a list of all parties involved in the manufacture of furniture with the Cattle Baron design and a list of all parties who purchased furniture with the Cattle Baron design.

E.    That Defendants be ordered to file with the Court and serve on SteelStrike, within thirty (30) days after the entry of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

F.    That SteelStrike be awarded damages in an amount to be determined at trial for all infringing activities, including SteelStrike's damages, including reputational damages and lost profits, Defendants' profits, plus any costs incurred in preventing future confusion, mistake or deception, all from the date of first infringement;

G.    That Defendants pay SteelStrike a sum sufficient to cover the cost of corrective advertising necessary to alleviate any existing confusion resulting from Defendants' unauthorized use of SteelStrike's proprietary rights;

H.    That SteelStrike be awarded actual/compensatory damages caused by Defendants;

I.    That SteelStrike be awarded punitive damages due to the willful and wanton nature of Defendants' conduct;

J.    That SteelStrike be awarded pre-judgment and post-judgment interest;

K.    That SteelStrike be awarded its attorneys' fees and costs incurred in prosecuting this action, including its expert witness fees; and

L.    That the Court award such other and further preliminary and permanent relief to SteelStrike as the Court deems equitable and appropriate.

## JURY DEMAND

SteelStrike demands a jury trial on all issues so triable.

Respectfully submitted,

DATED:  February 19, 2013          By:   s/ Robert R. Brunelli
                                                                Robert R. Brunelli
                                                                    rbrunelli@sheridanross.com
                                                                Miriam D. Trudell
                                                                   mtrudell@sheridanross.com
                                                                Patricia Y. Ho
                                                                   pho@sheridanross.com
                                                                SHERIDAN ROSS P.C.
                                                                1560 Broadway, Suite 1200
                                                                Denver, Colorado  80202-5141
                                                                Telephone:    303-863-9700
                                                                Facsimile:     303-863-0223
                                                                Email:          litigation@sheridanross.com

                                                            ATTORNEYS FOR PLAINTIFF STEELSTRIKE
                                                            LEATHER PRODUCTS INC.